*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-042

AUGUST TERM, 2016

| | | |
|---|---|---|
| Jeremiah Bindrum | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Windsor Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| American Home Assurance Company, | } | DOCKET NO. 685-12-11 Wrcv |
| Chartis Insurance Company, NuQuest Bridge | } | |
| Pointe | } | |

Trial Judge: Theresa S. DiMauro

In the above-entitled cause, the Clerk will enter:

Plaintiff Jeremiah Bindrum appeals the superior court's grant of summary judgment to defendant NuQuest Bridge Pointe with respect to plaintiff's lawsuit alleging, in relevant part, the underfunding of a worker's compensation Medicare Set Aside (MSA) arrangement that was approved by the Centers for Medicare & Medicaid Services (CMS) and incorporated into a stipulated Form 15 settlement approved by the Commissioner of the Department of Labor. We affirm.

The following facts are undisputed. Plaintiff was injured in 2003 while working in the course and scope of his employment. Following the injury, plaintiff claimed permanent total disability benefits under Vermont's Worker's Compensation Act, and, as a result, his employer's worker's compensation insurer, AIG, began paying him temporary benefits.

In 2005, plaintiff filed a medical malpractice lawsuit against the doctor who treated him for his injury. That case settled in 2008. Meanwhile, in 2007, plaintiff sued AIG in federal court for allegedly acting in bad faith by failing to timely handle and settle his worker's compensation claim.

In 2008, plaintiff participated in a three-way mediation that included AIG and addressed both his medical malpractice and worker's compensation actions. The mediation led to a settlement agreement with AIG, prepared on a Vermont Department of Labor (DOL) form, providing that: (1) plaintiff would retain his full medical malpractice settlement, with AIG waiving any worker's compensation lien on the recovery; (2) plaintiff would receive a $225,000 lump sum from AIG, and AIG would start advancing him $7000 per month credited against the lump sum; and (3) AIG would create an MSA to pay for plaintiff's undetermined future medical expenses, to be funded "only to the amount required for CMS approval up to a limit of $750,000.00." The parties further agreed that AIG would have the choice of vendor to set up and administer the MSA,

and that their agreement would not be submitted to the DOL commissioner until CMS had approved the MSA.[1]

AIG contracted with defendant to set up and administer the MSA. Defendant submitted to CMS an MSA with a value of $223,693. CMS responded with a December 8, 2008 letter, which was copied to plaintiff and his counsel, stating, among other things, that: (1) an MSA with a value of $282,179 would "adequately consider[] Medicare's interests"; and (2) when MSA funds "have been depleted in a year, Medicare will pay for services that are related to the work injury or disease for the remainder of that year until the scheduled date for the subsequent year's deposit into the WCMSA account."

AIG agreed to the additional amount, and defendant modified the MSA accordingly. On March 11, 2009, AIG and plaintiff, who was represented by two attorneys and a Medicare consultant, signed the settlement agreement, which recited the terms of the MSA, and submitted it to the DOL for approval. The DOL approved the agreement a week later.

In 2010, plaintiff sued AIG again in federal court, this time alleging that AIG undervalued the MSA and unnecessarily delayed sending it to the DOL. The federal district court dismissed plaintiff's complaint without prejudice, concluding that: (1) the difference between AIG's MSA valuation and a much higher valuation done by plaintiff's consultant in March 2008 had no bearing on the actual damages plaintiff alleged; and (2) any damages caused by AIG's alleged delay in sending the MSA to the DOL did not meet the federal jurisdictional threshold amount. The United States Court of Appeals affirmed this decision. See Bindrum v. Am. Home Assurance Co., 441 Fed. Appx. 780 (2d Cir. 2011).

Plaintiff then filed the instant action in Vermont superior court, raising similar allegations, but adding NuQuest as a defendant. Defendant moved for judgment on the pleadings and joined in AIG's motion to dismiss. The superior court dismissed several counts of the complaint, but allowed plaintiff's third-party-beneficiary claim against NuQuest to go forward.[2] NuQuest moved for summary judgment in July 2015, raising a dozen bases for granting the motion. In January 2016, the superior court granted the motion, concluding that, with respect to the contract between AIG and defendant, plaintiff was a third-party beneficiary only to the extent that AIG was required to create an MSA that would be acceptable to CMS, but not as to any particular level of funding. As the court noted, plaintiff had acknowledged in his deposition that CMS agreed that Medicare would cover any shortfall in the approved MSA. The court further noted that plaintiff had produced no evidence of any economic damage sustained due to the alleged undervaluation of the MSA. Nor could he, reasoned the court, because any inadequacy in the MSA would harm only Medicare, which had indicated that it would cover any shortfall—not plaintiff. According to the court, as long as the MSA was approved by CMS, plaintiff had no cause of action with respect to the agreement between AIG and defendant. Citing the same rationale applied by the United States

---

[1] As the superior court explained, because future medical expenses stemming from a work-related injury can impact Medicare, federal regulations require that: (1) a portion of an award for such expenses be set aside in a separate account to shield Medicare from future claims that could be paid by secondary sources; and (2) the MSAs, which are funded in an amount based on already incurred medical expenses and the claimant's life expectancy, be approved by CMS to avoid Medicare later refusing to pay for medical expenses related to the workplace injury. See 42 C.F.R. § 411.66-411.67.

[2] Plaintiff settled with AIG in January 2015.

Court of Appeals in this matter, the court stated that the mere existence of the approved MSA, whether funded with ten dollars or ten million dollars, protected plaintiff's interest in having his future medical expenses paid for. See id. at 781-82 (rejecting plaintiff's argument that defendants undervalued his MSA based on following reasoning: (1) settlement agreement obligated defendants "only . . . to fund the MSA up to the amount required for CMS approval"; and (2) to extent that MSA was underfunded, "only Medicare, not plaintiff" would be harmed because "the amount of the set aside has no bearing on plaintiff's ability to obtain reimbursement for his work-injury-related medical expenses").

On appeal, plaintiff argues that the superior court abused its discretion in denying his motion to compel discovery, and that the court erred by granting defendant summary judgment. We first consider the discovery issue. We need not address the discovery issue because we reject defendant's argument that the court erred in granting summary judgment. We uphold that decision for the same reasons cited by the superior court and the United States Court of Appeals. Federal regulations, the Form 15 settlement agreement approved by the Department of Labor, and plaintiff's own acknowledgement in his deposition establish that plaintiff's interest as a third party beneficiary of the agreement between AIG and Nuquest was limited to his interest in an MSA that met with CMS approval, thereby assuring that additional Medicare-eligible medical expenses beyond those funded through the MSA would be covered by Medicare. This conclusion is not diminished by the fact that plaintiff's hired consultant projected a much higher MSA funding amount or that the settlement agreement permitted funding up to $750,000. AIG's obligation was to submit an MSA that would be approved by CMS. AIG fulfilled that obligation through defendant, and CMS accepted the revised MSA, as did plaintiff with the advice of counsel, based on CMS's statement that Medicare would cover any shortfall in a given year.

Plaintiff points to an alleged ambiguity in the effective date of the settlement agreement between him and AIG, but any such ambiguity is immaterial because the effective date of the agreement has no bearing on whether the MSA was undervalued or whether plaintiff suffered any damages because of it. The issue concerning the effective date may have been relevant at the motion-to-dismiss stage as to whether defendant could have breached the settlement agreement before it became effective or whether the release language would apply, but neither of those issues played any part in the superior court's decision. Accordingly, we discern no basis to disturb the superior court's grant of summary judgment to defendant. See V.R.C.P. 56(a) (stating that summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

3